James P. Laurick, OSB No. 821530
jlaurick@kilmerlaw.com
Kilmer, Voorhees & Laurick, P.C.
732 NW 19th Avenue
Portland, Oregon 97209
Telephone: (503) 224-0055
Fax: (503) 222-5290

Christi A. Lawson (*pro hac vice*)
clawson@foley.com
John J. Atallah (*pro hac vice*)
jatallah@foley.com
Foley & Lardner LLP
301 East Pine Street, Suite 1200
Orlando, FL 32801
Telephone:  407-244-3235

Attorneys for Defendant CIC Mortgage Credit, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHUONG THAO HA,<br><br>                Plaintiff,<br><br>        v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and CIC MORTGAGE CREDIT, INC.,<br><br>                Defendants. | Case No. 3:20-cv-00137-AC<br><br>**DEFENDANT CIC MORTGAGE CREDIT, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**<br><br>**Request for Oral Argument** |

## **TABLE OF CONTENTS**

LOCAL RULE 7–1 CERTIFICATION ................................................................................... 1

INTRODUCTION ................................................................................................................. 1

UNDISPUTED MATERIAL FACTS .................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.     SUMMARY JUDGMENT STANDARD ................................................................... 3

II.    PLAINTIFF CANNOT BASE HER CLAIMS ON CONSUMER REPORTS PRIOR TO JANUARY 23, 2018 ................................................................................ 3

III.   CIC MAINTAINED REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY ............................................................................................ 4

IV.   PLAINTIFF WAS NOT HARMED BY CIC'S CONDUCT ...................................... 9

        A.    CIC Did Not Cause Plaintiff a Delay in Obtaining Her Home ............................... 9

        B.    Plaintiff's Alleged Emotional Distress was Not Due to CIC .............................. 10

CONCLUSION .................................................................................................................... 11

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Federal Cases**

*Cahlin v. General Motors Acceptance Corp.*,
　936 F.2d 1151 (11th Cir. 1991) ...................................................................................................4

*Guimond v. Trans Union Credit Info Co.*,
　45 F.3d 1329 (9th Cir. 1995) .......................................................................................................4

*Opal Labs Inc. v. Sprinklr, Inc.*,
　No. 3:18-cv-01192-HZ, 2021 WL 3713042 (D. Or. Aug. 19, 2021).........................................3

*Sarver v. Experian Info. Sols.*,
　390 F.3d 969 (7th Cir. 2004) .......................................................................................................4

*Wright v. Experian Info. Sols., Inc.*,
　805 F.3d 1232 (10th Cir. 2015) ...................................................................................................4

**Federal Statutes**

12 C.F.R. 1016, *et. seq* ...................................................................................................................7

15 U.S.C.
　§ 1681a(p) ....................................................................................................................................5
　§ 1681a(u) ................................................................................................................................5, 7
　§ 1681e..........................................................................................................................................7
　§ 1681e(b) ............................................................................................................................1, 4, 9
　§ 1681g(e)(5) ................................................................................................................................7
　§ 1681p(1) .....................................................................................................................................3
　§ 6801, *et. seq*. ............................................................................................................................7

## LOCAL RULE 7–1 CERTIFICATION

Counsel for Defendant CIC Mortgage Credit, Inc. conferred with counsel for Plaintiff Phuong Thao Ha regarding the subject of this Motion on August 27, 2021, and the parties could not reach an agreement regarding the issues raised herein.

## MOTION FOR SUMMARY JUDGMENT

Defendant CIC Mortgage Credit, Inc. ("CIC"), through undersigned counsel, hereby moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment in its favor on Plaintiff Phuong Thao Ha's claims against it. In support of its Motion, CIC submits the following arguments and points of authority.

## INTRODUCTION

Plaintiff's claims against CIC are contrary to the reality of the reseller consumer reporting industry. Plaintiff's theory of liability is that, in order to comply with the Fair Credit Reporting Act ("FCRA"), CIC must do the impossible by reviewing the tri-merge reports it assembles and reconcile the information reported by the three nationwide consumer reporting agencies in under 10 seconds. This argument defies logic and has no basis in the FCRA and federal regulations that govern resellers. The reality is that Plaintiff cannot produce any evidence that CIC failed to follow reasonable procedures to assure maximum possible accuracy when assembling Plaintiff's tri-merge consumer report. Moreover, Plaintiff cannot prove that CIC caused any of the injuries she claims she suffered as a result of the information in her consumer report. For these reasons, CIC is entitled to summary judgment in its favor on Plaintiff's claims against it.

## UNDISPUTED MATERIAL FACTS

On January 23, 2020, Plaintiff filed this lawsuit, alleging that CIC willfully and negligently violated the FCRA, specifically 15 U.S.C. § 1681e(b), by providing Habitat for Humanity – Portland/Metro East ("HFH") with a consumer report containing information reported by Equifax

that Plaintiff claims belongs to her brother rather than to her. (Dkt. 1; *see, also,* Dkt. 14.) Plaintiff claims that these inaccuracies in her consumer report delayed the process of acquiring housing through HFH and has caused her emotional distress. (Declaration of Christi A. Lawson ("Lawson Decl.") ¶ 2, Ex. A, Transcript of the Deposition of Phuong Thao Ha ("Ha Dep.") 28:16–22.)

This case arises from Plaintiff's 2016 application for, and eventual purchase of, a home from HFH. Prior to her 2016 application, Plaintiff applied to purchase a home from HFH multiple times, likely beginning in 2014, though Plaintiff does not recall exactly how many times she applied or when. (Ha Dep. 13:17–14:10.) There is no evidence in the record as to why those pre-2016 applications were denied. On September 13, 2016, Plaintiff again applied for housing from HFH (Lawson Decl. ¶ 3, Ex. B) and on December 5, 2016, Plaintiff's application was accepted (Lawson Decl. ¶ 6, Ex. 7).

As part of the application process, HFH requested Plaintiff's consumer report from CIC. (Lawson Decl. ¶ 5, Ex. D, Transcript of the Deposition of Michelle Rosa Bouza ("Rosa Bouza Dep.") 21:15–25.) While HFH noted the alleged inaccuracies in Plaintiff's consumer report that form the basis of Plaintiff's claims in this lawsuit, HFH decided to disregard those inaccuracies. (Lawson Decl. ¶ 9, Ex. H.) On April 13, 2018, a note was placed in Plaintiff's application file to that effect, stating in part "[t]he erroneous accounts did not have a negative impact on her credit score and the erroneous mortgage account was paid off in 2009. The homeownership staff agreed that we would continue to work on getting the erroneous accounts off her credit report but if it occur before the home sale, the buyer could proceed with the home purchase." (*Id.*) Accordingly, Plaintiff was pre-approved for a mortgage on June 18, 2019 (Lawson Decl. ¶ 7, Ex. F) and took possession of her house that same month (Ha Dep. 13:9–11). There is no evidence of any delay

with Plaintiff's application, pre-approval, or move-in to her HFH house that relates in any way to the contents of Plaintiff's consumer report.

## ARGUMENT

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.'" *Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192-HZ, 2021 WL 3713042, at *3 (D. Or. Aug. 19, 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial." *Id.*

**II.    PLAINTIFF CANNOT BASE HER CLAIMS ON CONSUMER REPORTS PRIOR TO JANUARY 23, 2018**

As an initial matter, Plaintiff cannot base her claims against CIC on information in consumer reports provided prior to January 23, 2018. Claims under the FCRA are subject to a two-year statute of limitations, accruing from the date the plaintiff discovers the conduct that is the basis for the alleged liability. 15 U.S.C. § 1681p(1). Plaintiff filed her original Complaint in this action on January 23, 2020 (Dkt. 1), and therefore cannot base her claim on any alleged violations discovered before January 23, 2018. Plaintiff has not alleged, or produced any evidence showing, facts to support tolling this statute of limitations. Accordingly, this Court's review of Plaintiff's claims should be based only on reports and events occurring on or after January 23, 2018. *See* 15 U.S.C. § 1681p(1).

Page  3 -   CIC MORTGAGE CREDIT, INC.'S MOTION FOR
            SUMMARY JUDGMENT

**III.  CIC MAINTAINED REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY**

CIC, in its role as a reseller consumer reporting agency, maintained and followed reasonable procedures to assure maximum possible accuracy with respect to Plaintiff's consumer report. The FCRA provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." *Guimond v. Trans Union Credit Info Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). "The FCRA does not impose strict liability, however—an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Id.* at 1334; *see also Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991).

While the reasonableness of the procedures employed by a CRA to comply with section 1681e(b) is normally a question of fact for a jury (*see Guimond*, 45 F.3d at 1333), summary judgment is appropriate "when 'the reasonableness or unreasonableness of the procedures is beyond question.'" *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (quoting *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). A CRA's procedures are reasonable as a matter of law where a plaintiff fails to show that "the CRA[] knew or should have known" that the information provided to it was inaccurate. *Id.* Here, Plaintiff relies merely on the fact that she claims the Equifax information was inaccurate and CIC passed along that inaccurate information. Plaintiff cannot present any evidence to create a genuine issue of material fact as to the reasonableness of CIC's procedures where applicable federal regulations required CIC to assemble Plaintiff's tri-merge report and deliver it to HFH in under 10 seconds, and where

Page  4 -   CIC MORTGAGE CREDIT, INC.'S MOTION FOR
              SUMMARY JUDGMENT

CIC had no legal obligation to reconcile the credit data reported by the nationwide CRAs.

To understand CIC's role in this matter, it is important to understand the different types of consumer reporting agencies, as delineated by the FCRA. Equifax Information Services, LLC ("Equifax") is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" ("nationwide CRA"), because it

> regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) public record information; and (2) credit account information from persons who furnish that information regularly and in the ordinary course of business.

15 U.S.C. § 1681a(p). In other words, a nationwide CRA assembles and maintains a database of consumer information, which it then reports in response to a request for a consumer report regarding a specific consumer. CIC, on the other hand, is a "reseller," because it is a consumer reporting agency that

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
> (2) does not maintain a database of the assembles or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u). In other words, a reseller purchases consumer data from other consumer reporting agencies, usually the nationwide CRAs, and merges the data into a single unified report that it then provides to an end user like HFH. It is uncontested that Equifax and CIC, respectively, fall into these categories. (*See* Dkt. 14, ¶ 4.)

In his expert report in support of CIC, Terry Clemans, executive director of the National Consumer Reporting Association and a more than 30-year veteran of the consumer reporting agency, explained the different roles nationwide CRAs and resellers play in the consumer reporting

Page  5 -   CIC MORTGAGE CREDIT, INC.'S MOTION FOR
            SUMMARY JUDGMENT

industry and how those different roles impact a reseller's obligations under the FCRA. (Lawson Decl. ¶ 11, Ex. K, Expert Witness Report of Terry W. Clemans ("Clemans Report").) CIC, in its role as a reseller, assembles and merges data from the three nationwide CRAs (Equifax, Experian, and Trans Union) into what is known as a tri-merge credit report. (Clemans Report at 2.) Tri-merge reports were created by the U.S. Department of Housing and Urban Development ("HUD"), Fannie Mae, and Freddie Mac (the "Government Sponsored Entities") for use in mortgage underwriting and are required for mortgage lending. (*Id.* at 3.) The process by which mortgage lenders request, and resellers assemble and provide, tri-merge reports is entirely automated, technologically sophisticated, and highly regulated by HUD, Fannie Mae, and Freddie Mac. (*Id.*)

In fact, the Government Sponsored Entities that require the use of the tri-merge reports for mortgage underwriting, require resellers to use a fully automated, nearly-instantaneous process for assembling tri-merge reports and delivering them to end-users. (*Id.* at 3–4.) Fannie Mae's service level standards require that a reseller complete 99.9% of report requests in a given month in 10 seconds or less. (*Id.* at 3.) Within those 10 seconds, the reseller must receive a consumers identifying information from the end-user, connect to the nationwide CRAs, obtain machine-readable credit data from each of the nationwide CRAs, allow time for a credit score to be calculated on the data from each of the nationwide CRAs, combine the machine-readable credit data into a single, human-readable tri-merge report, and deliver the tri-merge report to the end-user in the format required by one of almost 100 different loan origination systems. (*Id.* at 3–4.) A reseller's failure to do all of that within 10 seconds for 99.9% of transactions can result in fines starting at $3,000 per month; or, for multiple violations, being disconnected from Fannie Mae's consumer reporting system, which can be fatal to a reseller. (*Id.*) This process leaves no time for human review of the information in a tri-merge report before it is delivered to the end-user. (*Id.*)

Page 6 -   CIC MORTGAGE CREDIT, INC.'S MOTION FOR
            SUMMARY JUDGMENT

Even if a reseller could review tri-merge reports before delivering them to the end-user, the reseller could not correct or otherwise change information in the tri-merge reports. (*Id.*) Equifax requires that resellers pass credit data to the end-user exactly as the reseller obtained it from Equifax. (Lawson Decl. ¶ 10, Ex. I, Transcript of the Deposition of Cassie Burroughs-Thomas ("Burroughs-Thomas Dep.") 54:5–24.); Lawson Decl. ¶ 11, Ex. J at EIS-HA-001727).

Moreover, the FCRA and federal and state privacy laws prevent the resellers from communicating directly with furnishers of credit information regarding a specific consumer's data without a signed written authorization from the consumer. (*See* 15 U.S.C. § 1681g(e)(5); 15 U.S.C. § 6801, *et. seq.*; 12 C.F.R. 1016, *et. seq.*) Resellers do not have business relationships with furnishers. (*See* 15 U.S.C. § 1681a(u).) Assuming the consumer granted the reseller authorization, obtaining such authorization, and updating the report would cause a significant slowdown in the mortgage loan origination process, delaying the mortgage approval timeline.

Based on the above, Plaintiff's claim against CIC is premised on the notion that CIC should have done the impossible: review the information reported by the three nationwide CRAs, compare the credit data reported by Equifax to the data reported by Trans Union and Experian, determine that Equifax's data was incorrect, contact furnishers to verify the information, and then alter the data accordingly before delivering Plaintiff's tri-merge report to HFH, all in the time it took to read this sentence. (*See* Dkt. 14, ¶ 32.) This cannot be the "reasonable procedure[]" required by 15 U.S.C. § 1681e, because it is physically impossible and would require resellers to violate the FCRA and privacy laws and regulations.

No court has ever held that a consumer reporting agency, reseller or nationwide CRA, has a legal obligation to reconcile one consumer reporting agency's report against the others' reports. Plaintiff cannot point to any evidence that CIC could or should have done anything differently

when it assembled and provided her tri-merge report to HFH.

The FCRA recognizes a reseller's inability to itself correct information provided by a nationwide CRA. Section 1681i(a)(1)(A) provides:

> Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or *indirectly through a reseller*, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which *the agency receives the notice of the dispute from the consumer or reseller*.

If a reseller could correct the information itself, it would not need to notify the agency of the dispute as required by § 1681i—it would simply correct the information. Section 1681i(f) further underscores that limitation:

> **(2) Action required upon receiving notice of a dispute**
> If a reseller receives a notice from a consumer of a dispute concerning the completeness or accuracy of any item of information contained in a consumer report on such consumer produced by the reseller, the reseller shall, within 5 business days of receiving the notice, and free of charge—
> (A) determine whether the item of information is incomplete or inaccurate as a result of an act or omission of the reseller; and
> (B) if—
> (i) the reseller determines that the item of information is incomplete or inaccurate as a result of an act or omission of the reseller, not later than 20 days after receiving the notice, correct the information in the consumer report or delete it; or
> (ii) *if the reseller determines that the item of information is not incomplete or inaccurate as a result of an act or omission of the reseller, convey the notice of the dispute, together with all relevant information provided by the consumer, to each consumer reporting agency that provided the reseller with the information that is the subject of the dispute*, using an address or a notification mechanism specified by the consumer reporting agency for such notices.

(Bold in original, emphasis added).

Page 8 -  CIC MORTGAGE CREDIT, INC.'S MOTION FOR
              SUMMARY JUDGMENT

Accordingly, Plaintiff cannot show that CIC failed to maintain reasonable procedures to assure the maximum possible accuracy of the data in her tri-merge report, and CIC is entitled to summary judgment on Plaintiff's sole claim against it.

## IV. PLAINTIFF WAS NOT HARMED BY CIC'S CONDUCT

Even if Plaintiff could show that CIC violated § 1681e(b), she has failed to produce any evidence that CIC caused any of the injuries she alleges in this action. While Plaintiff alleges vague harms in her Amended Complaint (*see* Dkt. 14, ¶¶ 43, 47), she admits that she only claims two types of injury: delay in obtaining a home from HFH and emotional distress. There is no evidence that CIC's conduct caused either.

### A. CIC Did Not Cause Plaintiff a Delay in Obtaining Her Home

The record is clear and uncontroverted that Plaintiff's obtaining a home from HFH was not delayed by the information in her consumer report. Representatives of HFH have testified that the alleged errors in Plaintiff's consumer report in no way delayed Plaintiff in obtaining a home from HFH. (Rosa Bouza Dep. 26:21–27:3 ("Q. . . . Did the errors that Habitat for Humanity identified in her Equifax credit report in October of 2016, did those errors delay Ms. Ha in any way in obtaining a home? A. No. Q. And did those errors in any way cause her to get disqualified from the homeownership program? A. They did not."), 56:23–57:2 (Q. So would it be fair to say at that point in time in November 2018, Habitat was not concerned that the resolution of any credit reporting issues would delay closing on Ms. Ha's home? A. Yes, that's correct."); Lawson Decl. ¶ 8, Ex. G, Transcript of the Deposition of Julie Wong ("Wong Dep.") 14:17–15:1 ("Q. In the last paragraph, the last sentence [of Exhibit 18] states, 'the homeownership staff agrees that we would continue to work on getting erroneous accounts off the credit account, but if it occur before the home sale, the buyer could proceed with the home purchase.' Do you see that? A. I do. Q. I'll just

ask you. Is that to say, if it did not occur? A. Yes, that's a typo."))[1] HFH never intended to deny Plaintiff a home or delay her in obtaining a home based on the allegedly inaccurate information in her consumer report. This was memorialized in a note to Plaintiff's homeowner file in April 2018. (Lawson Decl. ¶ 9, Ex. H.) No one at HFH ever told Plaintiff that she might would be disqualified from homeownership because of her credit. (Ha Dep. 21:7–14.) Moreover, the applicable two-year statute of limitations means that the only actionable consumer reports, those provided to HFH after January 23, 2018, were provided after Plaintiff was already approved to purchase a home from HFH.

HFH representatives further testified that any delay in Plaintiff's homeownership process was caused by the construction company, not by any concerns about Plaintiff's consumer report. (Rosa Bouza Dep. 35:3–13, 39:21–40:7.) In short, there is simply no truth to Plaintiff's claim that she was delayed in obtaining a home from HFH because of the information in her consumer report.

    **B.  Plaintiff's Alleged Emotional Distress was Not Due to CIC**

There is no evidence that CIC's conduct caused the emotional distress Plaintiff alleges. Plaintiff claims that the alleged inaccuracies in her consumer report, and the process of attempting to correct those inaccuracies, caused her emotional distress. (Ha Dep. 27:25–28:22, 29:17–30:3.) This emotional distress manifested in loss of sleep and headaches, which Plaintiff treated with Tylenol. (Ha Dep. 36:5–9.) However, Plaintiff admits that she never disputed her report with CIC. (Ha Dep. 108:5–19.) Thus, she never attempted to correct any inaccuracies with CIC.

Moreover, it is undisputed that CIC only provided Plaintiff's report to HFH. (Lawson Decl. ¶ 5, Ex. D.) If Plaintiff was not delayed in getting her home due to the report that CIC

---

[1] Ms. Rosa Bouza's testimony with respect to information reported by Equifax apply equally to information provided by CIC to Habitat. (Rosa Bouza Dep. 57:22–58:1 ("Q. . . In other words, the Equifax information in the report that CIC provided did not cause any delay in plaintiff's homeownership application or the closing; is that correct? A. Yes, that's correct.")

Page  10 - CIC MORTGAGE CREDIT, INC.'S MOTION FOR
            SUMMARY JUDGMENT

provided to HFH, then Plaintiff had no reasonable basis to be emotionally distressed by that report.

Further, Plaintiff concedes that during her homeownership process with HFH, she thought Equifax and CIC were the same entity. (Ha Dep. 31:15–32:7, 35:17–20, 56:2–6, 108:7–13.) Plaintiff cannot identify anything CIC allegedly did wrong other than providing her tri-merge report to HFH, which caused her no harm. As discussed above, CIC did not violate the FCRA simply by providing Plaintiff's tri-merge report to HFH. Accordingly, Plaintiff cannot prove that CIC violated the FCRA to cause her emotional distress.

Because Plaintiff cannot prove that CIC caused any of the harms she claims resulted from her consumer report, CIC is entitled to summary judgment on Plaintiff's claim against it.

## CONCLUSION

For the reasons stated above, CIC is entitled to summary judgment on all of Plaintiff's claims against it.

Dated: August 30, 2021                    Respectfully submitted,

                                                Foley & Lardner LLP

                                                */s/ Christi A. Lawson*

                                                Christi A. Lawson
                                                *Attorneys for Defendant CIC Mortgage Credit, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 30th day of August 2021, the foregoing **CIC MORTGAGE CREDIT, INC.'S MOTION FOR SUMMARY JUDGMENT** was served via ECF on the counsel of record listed below.

Michael Fuller
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, OR 97204
michael@underdoglawyer.com
503-222-2000

Robert S. Sola
Robert S. Sola, P.C.
1500 SW First Ave., Suite 800
Portland, OR 97201
rssola@msn.com
503-295-6880

*Attorneys for Plaintiff*

                                                Foley & Lardner LLP

                                                */s/ Christi A. Lawson*

                                                Christi A. Lawson
                                                *Attorneys for Defendant CIC Mortgage Credit, Inc.*